UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MALEK MOHAMMAD BALOUCHZEHI,<br><br>Defendant. | Case No. 21-CR-658 (JMF) |

## **DECLARATION OF MARC L. GREENWALD**

I, Marc L. Greenwald, an attorney admitted to practice before this Court, declare as follows:

1. I respectfully submit this Declaration pursuant to this Court's order dated February 24, 2026 related to Mr. Balouchzehi's petition under 28 USC § 2255. Mr. Balouchzehi filed with the Court a waiver of the attorney-client privilege on February 19, 2026.

2. I was appointed to represent Mr. Balouchzehi on October 21, 2022. My representation ceased after the Second Circuit affirmed Mr. Balouchzehi's conviction and sentence on October 28, 2024. During my time as appointed counsel, I was assisted, at various times, by four colleagues at Quinn Emanuel ("QE"): then-partner Tai Park, then-associates Courtney Whang, Marissa Smith and Cohl Love, each of whom filed a notice of appearance in this matter. Ms. Whang is now a partner at QE. Mr. Park, Ms. Smith and Mr. Love are no longer at QE.

3. I have reviewed Mr. Balouchzehi's petition. I see four issues raised by Mr. Balouchzehi regarding QE's representation. First, Mr. Balouchzehi states that he "did not personally select" my colleagues who defended Mr. Balouchzehi at trial. ECF 125 at 20. Second, Mr. Balouchzehi asserts that he did not authorize counsel to enter the DEA lab report stipulation. *Id.* at 14-15 and 20. Third, Mr. Balouchzehi claims he did not receive translated version of documents and that his visits with counsel pretrial were too brief for him to understand the

"consequences of decisions." *Id.* at 19. Fourth, Mr. Balouchzehi complains that QE did not pursue certain defenses. *Id.* at 20.

4.      Regarding the composition of the trial team, Mr. Balouchzehi enthusiastically consented to Mr. Park serving as lead trial counsel without me present. Ms. Smith and Mr. Love were members of the defense team from the day I was appointed, and Ms. Whang joined the team a short time later. All three worked tirelessly reviewing discovery, conducting legal research on possible motions and defenses, negotiating with the Government, and preparing for trial. Mr. Park joined the team when, in the leadup to trial, it became clear that I had a conflicting professional obligation that was not going to be adjourned. Mr. Park and I visited Mr. Balouchzehi at Hudson County Jail to discuss trial logistics, among other issues. When we discussed the possibility of Mr. Park serving as lead trial counsel, working with Ms. Whang, Ms. Smith, and Mr. Love, but without me, Mr. Balouchzehi expressed excitement at the plan and provided his consent. This trial plan comported with my obligations to provide Mr. Balouchzehi with the best defense possible, as Mr. Park is one of the deans of the federal criminal defense bar and a Fellow of the American College of Trial Lawyers. I was in contact with the team throughout the trial and I know they did an excellent job defending Mr. Balouchzehi.

5.      As to the stipulation regarding the lab report, I located an April 20, 2023 email from Ms. Whang confirming that that the trial team had the stipulation translated for Mr. Balouchzehi and that he explicitly consented to the stipulation. I have attached a true and correct copy of that email as Exhibit A to this Declaration.

6.      Mr. Balouchzehi further suggests due to the stipulation, "the DEA laboratory reports concerning the heroin attributed to Mozambique would be admitted" without "seek[ing] live testimony from the DEA chemist or from key foreign custodians involved in the chain of

custody and transfer of the Mozambique-related evidence." ECF 125 at 20. First, QE researched the chemist the government proposed to call, had strategy discussions about the potential witness testimony, and decided that the stipulation was better for the defense than witness testimony. Mr. Balouchzehi signed off on this course of action. *See* Ex. A. Second, the trial transcript shows that the DEA laboratory reports were never admitted into evidence—the stipulation, which Mr. Balouchzehi agreed to, stated the weight of the two packages marked as Exhibit 101 and 102 and that each had a detectable amount of heroin. ECF 95 at 691:20-693:10. Third, the trial team obtained extensive testimony undermining the chain of custody and transfer of Mozambique-related evidence during the cross examination of government witness Matthew Musselwhite. *See* ECF 95 at 694:14-702:5, 705:11-707:19, 709:14-710:12.

7.      The QE team was well aware that Mr. Balouchzehi did not speak or read English. We had every important document translated for the defendant into Farsi, either in writing or in person. I have accessed the invoices for our Farsi translator, Mamad Shirazi, which my firm submitted to the Court for payment. Attached as Exhibit B is a summary of those invoices prepared by my assistant upon review of the CJA invoices.

8.      Mr. Balouchzehi identifies four "claims or defenses" he suggests QE did not pursue. The reasons that QE did not pursue certain claims (or pursued them differently than Mr. Balouchzehi sought) are clear from the trial and appeal record. Nonetheless, those reasons are as follows:

(i)      <u>Charge Development & Entrapment</u>. ECF 125 at 4, 6, 8 , 9 and 20. QE conducted research related to the interactions that government agents had with Mr. Balouchzehi during their investigation and the entrapment defense. QE had internal discussions regarding the legal standard and the evidence against Mr. Balouchzehi

and made the strategic choice not to assert entrapment because the argument was without legal merit and related themes could be raised in other ways throughout trial. The team had multiple discussions with Mr. Balouchzehi regarding this decision and the reasoning behind it. Additionally, at the pretrial conference, the Court stated, "The next issue is the entrapment defense issue. I'm certainly inclined to agree with the government that there is no basis for an entrapment defense, given the likely evidence at trial as proffered by the government in its memorandum." ECF 84 at 21:22-25.

(ii)    <u>Extraterritorial Custody, Transfer, & Recording</u>. ECF 125 at 4, 6, 8 , 9 and 20. QE conducted research related to the nature of the investigation, and arrest and transfer of Mr. Balouchzehi prior to trial. QE had internal discussions regarding caselaw and saw no viable argument that these issues could aid Mr. Balouchzehi's defense. The team had multiple discussions with Mr. Balouchzehi regarding this decision and the reasoning behind it. Furthermore, the Government moved *in limine* to exclude reference at trial to his transfer from Kenyan custody: "[t]he defendant may not offer commentary, argument, questioning, or evidence regarding purported improper conduct by U.S. or Kenyan officials in the course of the expulsion and transport of the defendant to the United States, or by uncalled Kenyan witnesses in the defendant's arrest." ECF 62 at 1. The Court granted that motion. ECF 84 at 27:18-28:1, 29:13-23.

(iii)    <u>Defects & Inconsistencies Physical Evidence</u>. ECF 125 at 14 and 20. QE obtained extensive testimony undermining the Mozambique-related physical evidence. *See* ECF 95 at 694:14-702:5, 705:11-707:19, 709:14-710:12. Mr. Balouchzehi

4

summarizes some of this testimony to support his motion arguments related to the Mozambique evidence.  *See* ECF 125 at 14.  In relation to Mr. Balouchzehi's claims that such evidence does not match the "indictment's narrative[,]" it is unclear what he means.  The indictment describes the charges; QE's entire representation of Mr. Balouchzehi was aimed at casting doubt on those charges.  The trial transcripts reflect many ways in which QE advocated for Mr. Balouchzehi's defense.

(iv)    <u>Sentencing Leadership Enhancement</u>.  ECF 125 at 15-16, 21.  Mr. Balouchzehi seems to take issue that QE did not argue that his leadership sentencing enhancement was "based on the Government's leadership theory[.]"  ECF 125 at 21.  To the contrary, QE requested to brief (ECF 102) and then submitted full briefing (ECF 104) on this issue.  As to his complaint that QE did not argue that his "sentence was increased because [he] exercised [his] right to proceed to trial or because [he] declined to cooperate with the Government[,]" that is not a valid argument against the criteria laid out in the Sentencing Guidelines.  Regardless, QE did raise that Mr. Balouchzehi's "decision to exercise his right to trial should not factor... into the appropriate sentence."  ECF 108 at 11.  And that issue was advanced again at oral argument.  ECF 112 at 13:2-7.  The Court indicated that QE's argument was well-taken: "I want to repeat my praise for the defense at a trial in a case that I didn't think was especially a triable case.  I think the defense did an admirable job.  Mr. Love did a terrific job today."  *Id.* at 19:5-8.

9.    Mr. Park, Ms. Whang, Ms. Smith and Mr. Love have each reviewed this Declaration and have informed me that the representations in this Declaration are consistent with their memory of QE's defense of Mr. Balouchzehi.  In addition, pursuant to this Court's order, Mr.

Park and Mr. Love are separately submitting Declarations which I have reviewed and are consistent with my memory and review of QE's files.

I declare under the penalty of perjury that the foregoing statements are true and correct. Executed in New York, New York on this 17th day of March, 2026.

_____
Marc L. Greenwald